FILED

DEC 0 7 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

Midland / Odessa Division

Case No. 7:20-Cv-277-DC

*(to be filed in the clerk's office)*

|   |   |
|---|---|
| _____Raymond William Schmal_____ | ) |
| Plaintiff (in Pro Se) | ) |
|  | ) |
|  | ) |
| -v- | ) |
|  | ) |
| Luna County, Luna County Sheriff's Dept., | ) |
| Luna County Animal Control Shelter, Deming | ) |
| Animal Guardians, Michael Brown, Luis | ) |
| Molina, Sandy Foster, Tammy McCoy, | ) |
| Mike Reitz, and Does 1 thru 25_____ | ) |
| Defendants | ) |
|  | ) |

**Plaintiff's Complaint**

Jury Trial: (check one) Yes [ X ]  No [ ]

This complaint follows/modeled after federal form: "Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)".

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; TITLE 42, SECTION 1983

(Non-Prisoner Complaint)

**I.      The Parties to This Complaint**

**A. The Plaintiff**

|   |   |
|---|---|
| Name | Raymond William Schmal |
| Address | 100 East Wall Street |
|  | P.O. Box 10141 |
|  | Midland, Texas 79701 |
|  |  |
| County | Midland County |
| Telephone Number | 575-545-3809 |

E-Mail address          torpedo@mail.com

1.       During all times mentioned in this complaint, Raymond William Schmal,

hereinafter Plaintiff, was and still is a citizen of the United States of America.

**B. The Defendants**

Defendant No. 1

|  |  |
|---|---|
| Name | Luna County |
| Job or Title | County Government |
| Address | 700 S. Silver Ave. |
|  | Deming, New Mexico 88030 |

|  |  |
|---|---|
| County | Luna County |
| Telephone Number | 575-342-1342 |
| Email Address | linda_smrkovsky@lunacountynm.us |

[X] Individual Capacity  [ ] Official Capacity

Defendant No. 2

|  |  |
|---|---|
| Name | Luna County Sheriff's Department |
| Job or Title | Sheriff County Law Enforcement Agency |
| Address | 2462 J Street SE |
|  | Deming, New Mexico 88030 |

|  |  |
|---|---|
| County | Luna County |
| Telephone Number | 575-546-2655 |
| Email Address | jmartinez@lunacountynm.us |

[X] Individual Capacity  [ ] Official Capacity

Defendant No. 3

|  |  |
|---|---|
| Name | Luna County Animal Control Shelter |
| Job or Title | Animal Control Agency |
| Address | P.O. Box 568 |
|  | Deming, New Mexico 88031 |

|  |  |
|---|---|
| County | Luna County |
| Telephone Number | 575-546-2024 |

2

Email Address          <u>unknown to Plaintiff</u>

[X] Individual Capacity   [ ] Official Capacity

Defendant No. 4

Name                <u>Deming Animal Guardians</u>
Job or Title        <u>501(c)3 recognized charity</u>
Address             <u>P.O. Box 1275</u>
                    <u>Deming, New Mexico 88031-1275</u> and
                    <u>14325  NM-549</u>
                    <u>Deming, New Mexico 88030</u>

County              <u>Luna County</u>
Telephone Number    <u>(575) 544-2209</u>
Email Address       <u>deminganimalguardians083@gmail.com</u>

[X] Individual Capacity   [ ] Official Capacity

Defendant No. 5

Name                <u>Michael Brown</u>
Job or Title        <u>Captain at Sheriff Department</u>
Address             <u>2462 J Street SE</u>
                    <u>Deming, New Mexico 88030</u>

County              Luna County
Telephone Number    <u>575-546-2655</u>
Email Address       <u>jmartinez@lunacountynm.us</u>

[X] Individual Capacity   [X] Official Capacity

Defendant No. 6

Name                <u>Luis Molina</u>
Job or Title        <u>Deputy Sargent at Sheriff Department</u>
Address             <u>2462 J Street SE</u>
                    <u>Deming, New Mexico 88030</u>

County              Luna County
Telephone Number    <u>575-546-2655</u>

Email Address       <u>jmartinez@lunacountynm.us</u>

[X] Individual Capacity   [X] Official Capacity

3

Defendant No. 7

| | |
|---|---|
| Name | Sandy Foster |
| Job or Title | Owner of Luna County Animal Shelter |
| Address | P.O. Box 568 |
| | Deming, New Mexico 88031 |

| | |
|---|---|
| County | Luna County |
| Telephone Number | 575-546-2024 |
| Email Address | unknown to Plaintiff |

[X] Individual Capacity   [X] Official Capacity

Defendant No. 8

| | |
|---|---|
| Name | Tammy McCoy |
| Job or Title | Agent for Deming Animal Guardians |
| Address | P.O. Box 1275 |
| | Deming, New Mexico 88031-1275 and |
| | 14325  NM-549 |
| | Deming, New Mexico 88030 |

| | |
|---|---|
| County | Luna County |
| Telephone Number | (575) 544-2209 |
| Email Address | deminganimalguardians083@gmail.com |

[X] Individual Capacity   [ ] Official Capacity

Defendant No. 9

| | |
|---|---|
| Name | Mike Reitz |
| Job or Title | Owner and Agent for Deming Animal Guardians |
| Address | P.O. Box 1275 |
| | Deming, New Mexico 88031-1275 and |
| | 14325  NM-549 |
| | Deming, New Mexico 88030 |

| | |
|---|---|
| County | Luna County |
| Telephone Number | (575) 544-2209 |

Email Address   deminganimalguardians083@gmail.com

[X] Individual Capacity   [ ] Official Capacity

4

Defendant No. 10

Name                    <u>Unknown Does 1-25</u>

2.      This complaint includes list of unknown defendants: Luna County officials, Luna

County Sheriff Department personnel, Luna County Animal Shelter agents/personnel, and

Deming Animal Guardians agents or individuals connected to the Deming Animal Guardians.

Hereinafter, these defendants are designated Does 1-25, hereinafter "Does", inclusive, are

unknown to the plaintiff, who therefore sue these defendants by fictitious names. Plaintiff is

informed and believes and thus alleges that each of the defendants designated as Does are liable

for the damage to plaintiff in some manner. Plaintiff will amend his complaint when true names

and capacities of these defendants are ascertained.

3.      All times mentioned herein defendant, County of Luna, herein after "County", is a

unit of local government, duly formed and authorized under the laws of the state of New Mexico.

Upon information and belief, County, as part as its duties, regulates and provides supervision of

all persons employed by County, and County is responsible for its ordinances, resolutions,

customs, practices and usage of regulations. County has a responsibility to provide redress to

plaintiffs and to supervise its employees. County is being sued as a person. Plaintiff is informed

and believes and thus alleges that each of the County defendants is liable for the damage to

plaintiff in some manner.

4.      All times mentioned herein defendant, Luna County Sheriff's Department, herein

after "Sheriff", is a unit of local government, duly formed and authorized under the laws of the

state of New Mexico. Upon information and belief, Sheriff, as part as its duties, regulates and

provides supervision of all persons employed by Sheriff, and Sheriff is responsible for its

ordinances, resolutions, customs, practices and usage of regulations. Sheriff has a responsibility to provide redress to plaintiffs and to supervise its employees. Sheriff is being sued as a person. Plaintiff is informed and believes and thus alleges that each of the Sheriff defendants is liable for the damage to plaintiff in some manner.

   5.  All times mentioned herein defendant, Luna County Animal Control Shelter, herein after "Shelter", is a unit of local government, duly formed and authorized under the laws of the state of New Mexico. Upon information and belief, Shelter, as part as its duties, regulates and provides supervision of all persons employed by Shelter, and Shelter is responsible for its ordinances, resolutions, customs, practices and usage of regulations. Shelter has a responsibility to provide redress to plaintiffs and to supervise its employees. Shelter is being sued as a person. Plaintiff is informed and believes and thus alleges that each of the Shelter's defendants is liable for the damage to plaintiff in some manner.

   6.  All times mentioned herein defendant, Deming Animal Guardians, herein after "DAG", is a charity and private group that was endowed by the County and thereby the State with powers or functions governmental in nature. As such, DAG became an instrument of the State and became subject to the same constitutional limitations as the State itself. Further, a private group need not have acted in concert with a government employee in order to be subject to liability, though in this case DAG did act in concert with the County, Sheriff, and Shelter. DAG is being sued as a person. Plaintiff is informed and believes and thus alleges that each of the DAG's defendants is liable for the damage to plaintiff in some manner.

   7.  At all times mentioned herein, defendants, public officers Brown and Molina, hereinafter "Brown" or "Molina", are employed by the County of Luna, as Sheriff officer's, and

are enriched, rewarded, and compensated for their official duties and each carries out

discretionary functions while in their official capacity. Brown and Molina are being sued

individually and in their official capacity. Plaintiff is informed and believes and thus alleges that

each of these defendants is liable for the damage to the plaintiff in some manner.

8.      At all times mentioned herein, defendant, Shelter agent Foster hereinafter

"Foster", is employed by the County of Luna, as a Shelter officer, and is enriched, rewarded, and

compensated for her official duties and carries out discretionary functions while in her official

capacity. Foster is being sued individually and in her official capacity. Plaintiff is informed and

believes and thus alleges that this defendant is liable for the damage to the plaintiff in some

manner.

9.      At all times mentioned herein, defendants, McCoy and Reitz, hereinafter

"McCoy" and "Reitz", are employed by DAG. McCoy and Reitz are being sued individually and

in their individual capacity. Plaintiff is informed and believes and thus alleges that these

defendants are liable for the damage to the plaintiff in some manner.

## II.     Basis for Jurisdiction

Under 42 U.S.C § 1983, you may sue state or local officials for the "deprivation of any
rights, privileges, or immunities secured by the Constitution and [federal Laws]." Under
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388
(1971),* you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

[  ]  Federal officials (*a Bivens claim*)

[X]  State or Local officials (a § 1983 claim)

B.      Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state and local officials?

10.      I, Raymond William Schmal, claim the deprivation of my 4th, 5th, 6th, 7th, 8th, and 14th United States Constitution amendment rights, several times over by many local county officials   and private actors, thereby making the 42 U.S.C. § 1983 action the proper suit.

11.      The jurisdiction of the Court is invoked under 28 U.S.C. sections 1331, 1332 and 1343 (a)(3),(4), this being an action authorized by law to redress the deprivation "under the color of any statute, ordinances, regulation, custom, or usage, of any State or Territory or the District of Columbia." (42 U.S.C. § 1983.) All of the actions and damages have been to the detriment of plaintiff, and have occurred within the venue and jurisdiction of this Honorable Court.

---

C.      Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

I, Raymond William Schmal, am bringing no *Bivens* claim.

---

D.      Section 1983 allows defendants to be liable only when they have acted "under the color of any statute, ordinances, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C.  § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law.

### FERERAL CAUSES OF ACTION AGAINST DEFENDANTS

12.      I, Raymond William Schmal, am suing under 42 U.S.C. § 1983. Plaintiff alleges that actions and omissions that caused deprivations of plaintiff's federal constitutional rights

were enforced under color of law, New Mexico state law. Plaintiff also alleges that County

authority through legal direction given by county attorney fueled and directed deprivations of

Plaintiff's United States Constitutional rights.

## Count 1

### Plaintiff Alleges as Follows

13.     Plaintiff alleges that on December 11, 2018 through custom, usage, and practices

running rampant and unchecked in Luna County government, actors, County, Sheriff, Brown,

Molina, and Does constructively, forcefully and unlawfully removed plaintiff from his dwelling

unit in violation of New Mexico state law, which caused Plaintiff to be homeless, lose property

and property rights. As a custom, usage, and practice in Luna County, unlawful county counsel

was given by the county attorney to county employees that deprived Plaintiff of his federal

constitution rights, and were enforced by County, Sheriff, Brown, Molina, and Does,

individually and in their official capacity. These actors are liable for Plaintiff's deprivations

because of their authorization, condonation, ratification, and execution of acts done by them and

their employee's, acting in concert. The forced unlawful removal or eviction with no notice,

service, or court order, by County, Sheriff, Brown, Molina, and Does from Plaintiff's dwelling

unit is a violation and deprivation of plaintiff's Fourth, Fifth, Sixth, Seventh, Eight, and

Fourteenth Amendments of the United States Constitution.

## Count 2

### Plaintiff Alleges as Follows

14.     Plaintiff alleges that due to custom, practice, and usage by Luna County

government officials, actors, County, Sherriff, Shelter, DAG, Brown, Molina, Foster, McCoy,

Reitz and Does, individually and in their official capacity, deprived Plaintiff of a hearing before a neutral magistrate as proscribed by Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth amendment rights of the United States Constitution.

## Count 3

### Plaintiff Alleges as Follows

15.     Plaintiff alleges that through custom, usage and practice by Luna County government officials, actors, County, Sheriff, Luna County Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does, individually and in their official capacity, deprived Plaintiff of equal protection of the law as proscribed by the Fourteenth amendment of the Constitution. Plaintiff was not treated in the same manner as others in similar conditions and circumstances. By means of the unlawful removal and disallowing of Plaintiff access and control of his property in violation of New Mexico state law with no notice, service, and court order, above named actors denied Plaintiff due process of law and equal protection of the law in violation and deprivation of Plaintiff's Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth Amendment rights of the United States Constitution.

## Count 4

### Plaintiff Alleges as Follows

16.     Plaintiff alleges that through custom, usage, and practice of Luna County government officials, starting at about 7 a.m. on December 11, 2018 to March 27, 2019, when Plaintiff was finally allowed by court order control of the dwelling unit and remaining property, actors, County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does, individually and in their official capacity, under color of law took or confiscated personal

property from Plaintiff's dwelling unit and premises, and allowed other known and unknown

individuals through acts and omissions to confiscate, steal and/or destroy Plaintiff's personal

property depriving Plaintiff of his Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth

Amendment rights of the United States Constitution.

17.    County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does

taking of Plaintiff's property, and allowing Plaintiff's property to be taken, stolen, and damaged

was done without a warrant or affidavits supported by any judicial authority, or any notice,

service, or court order, and after defendants  took or confiscated, and even possibly stole

Plaintiff's property, the defendants left no receipt or any documentation that would allow

Plaintiff to retrieve his property, as such, all these acts or omissions are in violation of and a

deprivation of Plaintiff's Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth Amendment rights

of the United States Constitution.

### Count 5

### Plaintiff Alleges as Follows

18.    Plaintiff alleges that through custom, usage, and practice of Luna County

government officials, actors, County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy,

Reitz and Does, individually and in their official capacity, deprived Plaintiff from freedom of

summary punishment depriving plaintiff  of his Fourth, Fifth, Sixth, Seventh, Eight, and

Fourteenth Amendment rights of the United States Constitution.

19.    Such summary judgement of unlawfully removing Plaintiff from his dwelling

unit, unlawfully absconding with his property, and witnessing and letting Plaintiff's property be

destroyed, County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does

11

subjected Plaintiff to such deprivations by deliberate and reckless disregard of Plaintiff's rights

as proscribed by the Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth amendment of the

United States Constitution. Actors actions of willingly and improperly abusing the process

through summary punishment and all other actions alleged in the above allegations of this

complaint, should shock the court, and offend the conscious of any reasonable person, and

offend the concept of ordered liberty due to defendant's blatant disregard for United States

Constitutional requirements due to Plaintiff.

---

### III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and location of all relevant events. You may wish to include further details as the names of other persons involved in the events giving rise to your claim. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.

A.     Where did the events giving rise to your claim(s) occur?

7390 Rockhound Rd. SE
Deming, New Mexico 88030
Luna County

---

B.     What date and approximate time did the events giving rise to you claim(s) occur?

20.     Initial deprivations took place starting on December 11, 2018 at 7 am. The taking,

confiscating, stealing and the damaging of property of Plaintiff, by many people, both known

and unknown to Plaintiff, due to alleged rights deprivations was ongoing after December 11,

2018 until Plaintiff got back control of the dwelling unit and personal property on March 27,

2019 by order of the local state court.

C.      What are the facts underlying your claims(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

## STATEMENT OF THE CASE

21.     The deprivations of civil rights in this case were centered on an unlawful eviction enforced by New Mexico local government officials from Luna County in New Mexico. Plaintiff continuously occupied the premise from August 1, 2015 to December 11, 2018. The defendants, County, Sheriff, Brown, and Molina, and Does constructively, forcefully, and unlawfully removed Plaintiff in violation of the New Mexico state unlawful removal statute NMSA § 47-8-36(A), (NMSA, 1978), at about 7 am on Dec. 11, 2018. The defendants did the removal willingly and knowingly, thereby excluding, removing, and dispossessing the Plaintiff from the premises without a court order, any due process, and possibly by fraud. This was alleged to be a civil standby by the Sheriff to make sure things were done in a legal manner, but it turned into an unlawful removal action by Sheriff. Initial sheriff reports show that County, Sheriff, Brown, and Molina knew there was no court order for removal, but defendants proceeded anyways.

22.     On Dec. 11, 2018 at about 7 am, Plaintiff was going about his normal morning routine, which included taking care of his animals. Plaintiff ran a private animal sanctuary at the time of the incident. Plaintiff was at this time in negotiations with Randy Pirie, the landlord, to buy the property, as he was on amicable terms with the landlord a week earlier discussing in good faith a possible purchase of the property. This unlawful removal took Plaintiff completely by surprise as no notice of removal was given in violation of NMSA § 47-8-37, (NMSA, 1978).

23.     At this time, Randy Pirie and his brother John Pirie arrived at Plaintiff's dwelling unit with Molina to create an eviction or unlawful removal with no legal authority. Molina yelled

at Plaintiff from the gate at the property telling him he was evicted, and for Plaintiff to unlock

the gate immediately. According to sheriff's report, Molina's verbal warning at this time was the

Plaintiff's notice of removal, which violated New Mexico notice of removal law NMSA § 47-8-

37, (NMSA, 1978). Molina ordered Plaintiff off the property in eight minutes with whatever

property Plaintiff could grab and carry, which Plaintiff immediately protested as he told Molina

there was no court order for removal, and how can he grab everything is such short time. At that

point Molina flatly told Plaintiff that he did not need a court order, and threatened Plaintiff with

arrest if he does not leave the premises immediately. Molina's threats continued and Plaintiff

finally unlocked the gate over extreme protest. After Plaintiff unlocked the gate, the trio

proceeded to enter the property without any legal authority. This property entry was in violation

of New Mexico Law, the right of entry notice, as NMSA 47-8-24, (NMSA, 1978) requires.

24.     Plaintiff continued to protest the unlawful removal to no avail, and then

proceeded to take Molina's threat of arrest seriously. Plaintiff started to panic as he was forced to

start thinking about getting himself, his personal property, including his animals, off the

property; however, Plaintiff remained on the property, though disoriented. Molina did not arrest

Plaintiff despite his constant threat. Molina told Plaintiff that the Plaintiff was trespassing.

25.     Then Brown, Molina's superior officer, arrived and came on the property.

Plaintiff believes Brown appeared due to the legal problems facing Sheriff as they knew there

was no court order for removal. It is noted, that by law, the Sheriff enforces court ordered

removals in New Mexico as their duty, so Sheriff, Brown, and Molina proceeding without legal

authority causing Plaintiff's Constitutional rights deprivation must be viewed as a breach of duty,

or willful neglect of a duty. Brown started to talk to Plaintiff, and told Plaintiff to start taking his

personal property off the premises, as he threatened Plaintiff this would be the only chance

Plaintiff has to grab his property. Plaintiff continued to protest the fact there was no removal

court order, but was continually threatened by Brown he would be arrested for trespassing.

Brown told Plaintiff that Plaintiff had no right to be on the property as Plaintiff was trespassing.

Then Brown told Plaintiff that he was to go to a meeting right then with County officials

concerning Plaintiff's eviction as Brown admitted to Plaintiff there was a problem, and Brown

knew and even admitted to Plaintiff there was no court order for a removal, nor was a court order

needed according to Brown. Plaintiff frantically then started to remove what property he could,

and then Plaintiff contacted defendant Foster by phone, which she did answer through a

conversation and text.

  26. Brown came back to the property after the meeting, and told Plaintiff he would be

evicted off the property and arrested for trespassing if Plaintiff stayed on the property. Plaintiff

continued to protest saying there was no court order, but Brown insisted no court order for

removal was needed. Brown then threatened Plaintiff again that he would be arrested for

trespassing at behest of the Landlord Randy Pirie. The verbal exchanges between Plaintiff and

Brown over the no court order for removal and then threat of arrest was continual. At this point,

it was a futile effort for Plaintiff to request Brown to protect Plaintiff's rights.

  27. Plaintiff found out through Foster that a meeting was held that morning on Dec.

11, 2018, and who attended the meeting. Foster told Plaintiff that county counsel, a county

commissioner, an employee of Foster, Brown, John and Randy Pirie were in the meeting. In that

meeting, Plaintiff believes it was decided to evict Plaintiff, and use the excuse of trespassing as a

pretext for the unlawful removal because of what Brown told Plaintiff immediately following the

meeting. Plaintiff believes that the trespassing pretext amounts to fraud perpetrated on the

Plaintiff. If not fraud, then Plaintiff believes this is either malice or gross negligence on part of

the County and Sheriff deputies as following New Mexico law for removal from property

should be an automatic duty for them. Fraud, malice or gross negligence led to the Plaintiff's

rights deprivations, and loss of a large amount of property including beloved animals.

28.     Plaintiff received a text from Foster at 9:32 am on December 11, 2018. Foster

wrote in the text: "Ran into Mike Brown at the courthouse. He got a call so we couldn't talk

long. But he said there's no actual eviction. The sheriff isn't going to enforce whatever

agreement the property owner had with Ray. Brown is sending a deputy out with some statutes to

show the property owner Ray isn't actually being evicted. Seems like Ray has a big lawsuit on

his hands if he wanted to go that way." What the sheriff deputy had shown about the statutes to

Randy Pirie is unknown to Plaintiff, but it is clear Foster thought removal action was unlawful or

at least problematic. Regardless, Plaintiff was frantically trying to remove as much of his

personal property off the property as possible at that time.

29.     Plaintiff had property stolen, damaged and lost, which defendants are directly

liable. Plaintiff was pulling his trailers, RVs, any other personal property off the property to the

street out front of the lot. Randy Pirie called a tow truck driver to pull off Plaintiff's property

onto the street out front at Plaintiff's expense. The tow truck did pull some of Plaintiff's property

off the property. No care was taken for Plaintiff's property. John Pirie used a backhoe to put

Plaintiff's property in a pile, damaging and destroying Plaintiff's property. All above action took

place in front of Sheriff and its deputies. The Pirie brothers later left the premises with Plaintiff's

property, fencing, with what must seem Sheriff's authorization, and Plaintiff estimates this was

theft. New Mexico Law requires that landlord lawfully dispose of a tenant's property NMSA 47-8-34.1, (NMSA, 1978), giving the tenant 30 day to retrieve property. Plaintiff was not allowed such a legal state right, and Sheriff, Brown, Molina and Does completely ignored this statute. No one had a legal right to damage or steal a tenant's property. The longer Sheriff disallowed Plaintiff on the premises, the more of his property was stolen and damaged. Plaintiff has itemized his damaged and stolen property to be worth about $100,000.

30.     Plaintiff complained to sheriff personnel that the landlord was damaging his property. On December 12, 2018, a sheriff deputy noted in his report: "Ray informed me that he didn't think it was right that Randy and his buddies were getting rid of his property by scoping it up with a backhoe and tossing it into a pile, located just southwest of the property. Ray claimed that he felt his property was getting damaged and that some of the items moved were axles that went to Ray's flatbed trailer. I asked Ray if there was anything mentioned about property being removed from Randy's lot and he claimed that there wasn't." Plaintiff may not have mentioned his property removed by landlord to the deputy, but this occurred. Plaintiff was powerless to stop landlord and others from taking and destroying his property due to the constant threat of arrest by sheriff deputies for trespassing.

31.     During the afternoon of Dec. 11, 2018, Shelter, DAG, Foster, McCoy, and Reitz, and Does started to confiscate and steal Plaintiff's animals. This was a coordinated effort as all these defendants appeared out of nowhere with the means to take the animals. Plaintiff did not give any of these defendants permission to take the animals; however, Plaintiff, while in shock, was under duress to sign a document, which was ultimately written by Plaintiff, and signed by McCoy and Plaintiff, relinquishing the rights of twelve dogs owned by Plaintiff to DAG. Foster

17

pressured Plaintiff through a text message that Plaintiff to sign away another fifty dogs, which

Plaintiff refused to do.

     32.    Defendants did not give Plaintiff any warrant to take property or any citation, nor

court order, or any government authority to take the animals. Plaintiff received no receipt or any

inventory of taken animals, or any paperwork from defendants to allow Plaintiff to retrieve the

stolen animals. Plaintiff received nothing from defendants who took his animals. Plaintiff never

saw his beloved animals again, some being in his care since 2004, many being cared by Plaintiff

for at least 5 years. All animals were healthy, in good condition, and loved by Plaintiff. Plaintiff

later heard that some of his animals were immediately destroyed by the Shelter, causing Plaintiff

extreme emotional agony. To this day, Plaintiff has no knowledge of what happened to any of his

stolen animals. All animals not with the Plaintiff and immediately stolen, were taken over the

next few days. Plaintiff was helpless to stop the confiscation and theft of his animals by

defendants due to the constant threat of arrest.

     33.    On the day of the unlawful removal, McCoy, a woman charged with looking after

Plaintiff's stolen animals, was also trusted with the job of keeping Plaintiff off the property.

McCoy, in a sheriff report, told sheriff deputy that Plaintiff "isn't allowed on the property but she

was concerned that he might try to remove animals or other of his items now that she's gone

from the area." McCoy further stated to the deputy in the report: "She claimed that she

threatened Ray that deputies would be there to make sure he continued to comply with the order

he was given and she wanted to make sure it wasn't a bluff." Plaintiff never received any lawful

order, just threats This shows that defendants who took Plaintiff's animals did so with Sheriff

and deputies allowing such a theft without any court order or any other authority, and shows

Plaintiff dealt with constant threat of arrest by deputies if Plaintiff disallowed McCoy and others

if Plaintiff took his beloved animals, or any of his property, or even enter the lot. This amounts to

continual harassment by defendants.

34.     Defendant along with several other people continually threatened Plaintiff with

trespass and arrest if he got anything off the property. In a sheriff report, Randy Pirie requested

sheriff to cite Plaintiff: ". . . demanded I get Ray for Trespassing. He then demanded me to arrest

Ray and place him in handcuffs and take him to jail for trespassing. Randy demanded that I

arrest at the very moment and he seemed to get more aggressive as he yelled out the statements."

At no time was Plaintiff ever trespassing.

35.     The unlawful taking of property lasted over the next few days, and up until the

time Plaintiff was allowed by court order to get back on the property. In one sheriff report,

Randy Pirie admits there was no eviction; a sheriff deputy "asked Randy what was going on with

the eviction process. Randy stated that there was never an eviction given, it was more verbally by

mouth that he no longer wanted Ray on the property." When will the Sheriff and its deputies ever

enforce the New Mexico law in this case? New Mexico law does not allow verbal evictions. It is

shown repeatedly through sheriff reports and eyewitness accounts that the Sheriff and its

deputies facilitated and allowed an unlawful taking of Plaintiff's property, causing irreparable

damage to Plaintiff especially with the stealing of his beloved animals.

36.     After the unlawful removal, Plaintiff tried many time to recover whatever

property was left on the lot. Plaintiff received no further permission to recover remaining

property. The Plaintiff did contact the landlord on several occasions to receive permission to

enter the property and retrieve his personal property. Randy Pirie did not respond and thereby

constructively denied any of the numerous requests Plaintiff made. At no time did Plaintiff

abandon his personal property left on the lot. Plaintiff requested permission from the Luna

County Sheriff to retrieve remaining property, which was denied. When Plaintiff did request

permission from the Sheriff, Sheriff Personnel reminded Plaintiff he would be arrested for

trespassing if caught on Defendant's property, so more threats of arrest. On January 14, 2019,

Plaintiff met with the Luna County Counsel to have permission retrieving his remaining

property. Counsel denied the request and said he could not help. Plaintiff finally took the

landlord to court, and through a court order was allowed on the property for 21 days to recover

his property. Plaintiff recovered a little amount of his personal property.

   37.  Plaintiff was harassed by sheriff deputies and Shelter many times after the

removal. Sheriff department even told Plaintiff to not call them anymore if he had a problem, as

Plaintiff contacted Sheriff every time there was a problem on the property as he could drive by

the property and see his personal property disappearing. Plaintiff's shipping container left on the

property was broken into and burglarized as the steel lock shield was cut off.

   38.  This was a high profile case. Plaintiff received a great deal of negative press by

the local newspaper, and television news affiliates in Albuquerque, New Mexico, thereby

defaming Plaintiff all over the state of New Mexico. Plaintiff also received a great deal of

negative attention on social media, and public meetings were held about Plaintiff and his animal

sanctuary where attendees threatened to go to the property and take Plaintiff's animals. All this

done in an area where pets are constantly abandoned, mistreated, and where the Shelter kills

animals frequently. All the negative attention caused Plaintiff great anxiety.

   39.  Plaintiff points out that if he had ever been trespassing, or allowed to be

unlawfully removed, or not entitled to the state's statutory safeguards protecting his property, then why by way of a state court order was Plaintiff ever allowed back on the property for 21 days to retrieve whatever property he could? If Plaintiff had no right to be there he would have never been allowed by state court order to go back on the lot. Further, during this retrieval period, Plaintiff's hired help, when on the lot, were harassed by sheriff personnel. To this day, Plaintiff fears for his safety and liberty if he ever goes back to Luna County. This entire experience gone through by Plaintiff has created extreme emotional and mental distress in him.

40.    From December 11, 2018 to March 27, 2019, Plaintiff was not allowed on the property he was unlawfully removed from, nor was he able to retrieve his property, all in violation of New Mexico law. During this time he was harassed by Sheriff and Shelter personnel.

41.    Plaintiff believes that defendants have policies, customs and practices under the color of law to deny Plaintiff of property and property rights. The foregoing acts of County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does against Plaintiff were committed maliciously, wantonly, willfully, and without probable or reasonable cause, excuse or justification thereof. County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz and Does deprived Plaintiff to rights secured to him and expected by them by the Constitution of the United States in its entirety including but not limited to Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights.

42.    Plaintiff has a right to be free from the seizure of Life, Liberty, and property as of rights without due process of law or without warrant and to have equal protection under the laws, and the right to face their accuser(s). Plaintiff's Eighth Amendment right in its entirety but not limited to Plaintiff's right to be protected against cruel and unusual punishment, and the right to

be free from abusive process.

43.     By reason of the above, Plaintiff was and is, greatly injured in his reputation, loss of liberty and property by the pattern and abuses, which was an extreme hardship, to defend himself, and was greatly hindered and prevented from attending and transacting his affairs for a long time, to his damage and detriment.

---

## IV.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Plaintiff did not receive direct physical injuries from any defendant.

Plaintiff suffered extreme emotional distress due to the intentional acts done against him. Plaintiff was made indigent and homeless due to deprivations, and could not acquire proper affordable mental or medical treatment for emotional injuries. Plaintiff lost beloved pets that had been in his care for years, some of them he had been taking care since 2004. The loss of the animals and having no knowledge to what happened to his beloved animals caused plaintiff to suffer serious physiological and psychological harm, causing him extreme emotional distress that includes great grief and anxiety. Plaintiff suffered flashbacks, had an inability to sleep, a rise in his anxiety caused stress levels to increase his blood pressure, and plaintiff came close to death on several occasions due to his vicarious heart condition.

Plaintiff is an elderly individual, well over 65 years of age, with a handicap of an eye loss, and such overall emotional distress is extremely physically difficult on the plaintiff. Plaintiff has lost trust in government officials, and humanity in general due to the emotional distress caused by the deprivations.

Plaintiff suffered injury to his reputation, and defamation of his character. Press coverage of Plaintiff's circumstances, from the local newspaper, main stream television outlets in Albuquerque, New Mexico, which was seen across the state, and social media attacks against Plaintiff caused such defamation and injury to his reputation.

---

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the facts alleged. Explain the basis for the acts alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered against defendants as follows:

a.    Award of damages against the defendants, and each of them jointly and severally, in the amount of $1,250,000. The basis for this is there are five alleged rights violations listed in complaint. Each alleged rights violation is $250,000. Damages include extreme emotional distress the deprivations caused the plaintiff.

b.    Award compensatory damages against the defendants, and each of them, jointly and severally in the amount of $250,000. Plaintiff lost $100,000 worth of personal property due to the deprivations. Plaintiff's rights deprivations caused him the loss of his domicile, the safety and security of his home, and directly caused plaintiff to be made homeless is $150,000.

c.    Award punitive damages in an appropriate manner, but no less than $200,000 against County, Sheriff, Shelter, DAG, Brown, Molina, Foster, McCoy, Reitz, and Does 1-25 and each of them, individually, and in their official capacity.

d.      Award cost of this action and reasonable attorney's fees to the plaintiff and

expenses pursuant to 42 U.S.C. Section 1988; and

e.      Award exemplary damage as this Court may deem appropriate; and

f.      For the right to amend the complaint as needed; and

g.      Award such other and further relief to promote justice.

Trial by jury is demanded herein as provided by Amendment Seven of the United States

Constitution, and by Rule 38, Federal Rules of Civil Procedure.

---

## VI.    Certification and Closing

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support of, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address of file with the Clerk's Office may result in dismissal of my case.

Respectfully Submitted,

Date of signing:    12-07-2020

Signature of Plaintiff    _____

Printed Name of Plaintiff    Raymond William Schmal, in Pro Se

**B.**     **For Attorneys**

Date of signing:          _____

Signature of Attorney          _____

Printed Name of Attorney          _____

Bar Number          _____

Name of Law Firm          _____

Address          _____

_____

*City*                    *State*     *Zip Code*

Telephone Number          _____

E-mail Address          _____

25

12-07-2020

( PLEASE
MAIL BACK
COPY'S
TIME STAMPED

UNITED STATES
DISTRICT COURT

FOR THE WESTERN DISTRICT
OF
TEXAS

RECEIVED

DEC 0 7 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

MIDLAND / ODESSA
DIVISON

TITLE 42 SECTION 1983
ORIGINAL COMPLAINT
RAYMOND WILLIAM SCHMAL
E-MAIL TORPEDO@MAIL.COM
432-999-8946