## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RAYMOND WILLIAM SCHMAL,

      Plaintiff,

v.                                     Civ. No. 20-1324 JB/GJF

LUNA COUNTY, LUNA COUNTY SHERIFF'S
DEPT., LUNA COUNTY ANIMAL CONTROL
SHELTER, DEMING ANIMAL GUARDIANS,
MICHAEL BROWN, LUIS MOLINA, SANDY
FOSTER, TAMMY MCCOY, MIKE REITZ, and
DOES 1 thru 25,

        Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### ON (1) MOTIONS TO DISMISS [ECFs 22, 44], (2) MOTION TO QUASH
### SUMMONS [ECF 26], AND (3) MOTIONS FOR CONTINUANCE [ECFs 40, 51]

THIS MATTER is before the Court upon the following: (1) Defendants Deming Animal Guardians (DAG), Tammy McCoy, and Mike Reitz's Motions to Dismiss [ECF 22] and Defendant Deming-Luna County Humane Society (DLCHS[1]) and Sandra Foster's Motion to Dismiss [ECF 44]; (2) Defendants Michael Brown and Luis Molina's Motion to Quash Summons [ECF 26]; and (3) Plaintiff's Motions for Continuance [ECFs 40, 51]. The motions are fully briefed.[2] For the reasons set forth below, the Court recommends (1) **GRANTING IN PART AND DENYING IN PART** the Motions to Dismiss, (2) **GRANTING** the Motion to Quash, (3) **DENYING** the Motions for Continuance, and (4) **DISMISSING** this case **WITHOUT**

---

[1] *See* ECF 44 (clarifying that DLCHS was "improperly named as Luna County Animal Control Shelter").

[2] *See* ECFs 37, 39, 50 (noting that Plaintiff did not respond to—but that briefing was completed on—the motions to dismiss and quash summons), 42-43, 52-53 (Defendants' responses to Plaintiff's Motions for Continuance).

**PREJUDICE** if Plaintiff does not show good cause in writing as to why he has taken no steps to move this case forward.[3]

## I.   BACKGROUND

Plaintiff's pro se Complaint alleges that he "is an elderly individual, well over 65 years of age, with a handicap of an eye loss," who "ran a private animal sanctuary" in Luna County on a piece of private property that he both rented and "continuously occupied" since August 2015. Compl. [ECF 1] ¶¶ 21-22, p. 22.  Plaintiff's "sanctuary," apparently located in "an area where pets are constantly abandoned, [and] mistreated," contained his "beloved pets that had been in his care for years, some of them … since 2004" and "many … for at least 5 years."  *Id.* at ¶¶ 32, 38, p. 22. Plaintiff alleges that all of the animals he had on this property—including at least 62 dogs that belonged to him—were "healthy, in good condition, and loved by Plaintiff."  ¶¶ 31-32.  Plaintiff's view of the animals' wellbeing was not unanimous, however, as "public meetings were held about Plaintiff and his animal sanctuary where attendees threatened to go to the property and take Plaintiff's animals."  ¶ 38.[4]

---

[3] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's April 28, 2021, Order of Reference.  *See* ECF 28.

[4] *See Homeowner Evicts Tenant; Discovers 80 Dogs Living in Deplorable Conditions*, KRQE News 13 (Dec. 14, 2018),  https://www.krqe.com/news/new-mexico/homeowner-evicts-tenant-discovers-80-dogs-living-in-deplorable-conditions (stating that Plaintiff was "[a]n animal hoarder with a history of animal cruelty" who apparently "pos[ed] as a sanctuary in Deming" and that "[e]ighty dogs—inbred and without parvo shots—were found living on [the] property in inhumane conditions:" the dogs "rescued out of the house have never been out of the house;" "[t]he ones in the garage have never seen daylight;" there were "dozens of dead dogs and puppies in freezers;" and the house was rendered "unlivable" due to the "holes in the wall, and dog urine and feces covering the floor"—accompanied by a "gag"-inducing "stench"); *see also id.* (further noting that Plaintiff's  lease agreement "stated 'no pets;'" that "an employee of the shoddy operation was charged with animal cruelty after ten dogs allegedly died from neglect;" that Plaintiff "himself faced animal cruelty charges [in California] when forty cats and twelve dogs were removed from his California home for inhumane conditions;" and that Plaintiff apparently came to New Mexico because "[h]e couldn't have dogs for three years in the state of California").  This news article is cited for general context and plays no part in the Court's analysis or recommendations.

The Complaint alleges that on December 11, 2018, "at about 7 am," Defendants Brown and Molina (along with Plaintiff's landlord and unidentified "Does") "constructively" and "forcefully" removed Plaintiff from the property—and did so without any sort of "notice," "service," "affidavit," "hearing," "warrant," "court order," or "legal authority."  ¶¶ 13-14, 17, 21-23, 25.[5]  Specifically, Defendant Molina told Plaintiff that he was "evicted" and "ordered Plaintiff off the property in eight minutes with whatever property Plaintiff could grab and carry."  ¶¶ 23-25.  Later that morning, Defendant Brown went to a meeting with the "county counsel, a county commissioner, an employee of [Defendant] Foster [who worked for Defendant DLCHS], [and the landlord]."  ¶¶ 5, 8, 25, 27.  At this meeting, "it was decided to evict Plaintiff … [for] trespassing." ¶ 25.  Defendant Foster also spoke briefly with Defendant Brown at the courthouse that morning regarding the removal of Plaintiff from the property (and was apparently informed that there was "no actual eviction").  ¶ 28.

The Complaint goes on to allege that sometime "[d]uring the afternoon" on December 11, 2018, Defendants DLCHS, DLCHS employee Foster, DAG, and DAG employees McCoy and Reitz (along with unidentified "Does")  "appeared out of nowhere with the means to take the animals" and, in "a coordinated effort," started to "confiscate and steal Plaintiff's animals."  ¶¶ 5, 8, 9, 31.  Although he apparently signed a document "under duress" that "relinquish[ed] the rights of twelve dogs," Plaintiff alleges that he neither "[gave] any of these defendants permission to take the animals" nor "abandon[ed] his personal property."  ¶¶ 31, 36.  He further alleges that these Defendants "took Plaintiff's animals … with [the Sheriff's Department] and deputies *allowing* such a [taking]," that Defendant McCoy was "trusted with the job of keeping Plaintiff off the

---

[5] Defendants Luna County and Luna County Sheriff's Department have been dismissed from this suit with prejudice. ECF 38.  In addition, the landlord is not part of this suit, and no "Doe" Defendants have yet been identified.

property," and that Defendant McCoy "threatened [Plaintiff] that deputies would be there" to ensure that he stayed off the property and that he would be arrested if he "enter[ed] the lot" or tried to prevent "McCoy and others" from taking his animals or other property.  ¶¶ 33, 35 (emphasis added).  In addition, he alleges that "the Sheriff['s] [Department] and its deputies facilitated" such a taking and that he "was powerless to stop landlord and others from taking and destroying his property due to the constant threat of arrest by sheriff deputies for trespassing."  ¶¶ 30, 35.

Plaintiff also generally alleges that Defendants Brown, Molina, DLCHS, Foster, DAG, McCoy, and Reitz (along with unidentified "Does") all "individually and in their official capacity, under color of law took or confiscated personal property from Plaintiff's dwelling unit and premises, and allowed other known and unknown individuals through acts and omissions to confiscate, steal and/or destroy Plaintiff's personal property." ¶¶ 5, 8, 9, 16, 19.[6]  He alleges that DLCHS "is a unit of local government, duly formed and authorized under the laws of the state of New Mexico" and that DAG is "a charity and private group"—but one "endowed by the County … with powers or functions governmental in nature."  ¶¶ 5-6.  Without identifying any other similarly situated individuals, Plaintiff further alleges that he "was not treated in the same manner as others in similar conditions and circumstances."  ¶ 15.  Finally, he alleges that Defendants' actions "caused him the loss of his domicile, the safety and security of his home, and directly caused plaintiff to be made homeless" and "indigent" and to "suffer serious physiological and psychological harm."  pp. 22-23.

In light of the foregoing allegations, Plaintiff contends that Defendants violated his "Fourth, Fifth, Sixth, Seventh, Eight, and Fourteenth Amendment[]" rights under the United States

---

[6] The Complaint does not state precisely when the Sheriff's Office Defendants (Brown and Molina) (as opposed to DLCHS and DAG and their employees) took Plaintiff's property.  *See* ¶¶ 16, 35 (alleging that the takings (by all Defendants) began on December 11, 2018, at 7:00 a.m. and "lasted over the next few days, and up until" March 27, 2019, when Plaintiff was allowed to reenter "the dwelling unit and remaining property").

Constitution.  *See* ¶¶ 10, 13-19, 41-42 (asserting both "due process of law and equal protection" claims under the Fourteenth Amendment).

## II.   THE COURT SHOULD GRANT IN PART THE MOTIONS TO DISMISS

Defendants DLCHS, Foster, DAG, McCoy, and Reitz filed two essentially identical motions to dismiss.  *See* ECFs 22 (filed by DAG, McCoy, and Reitz), 44 (filed by DLCHS and Foster).  In the  motions, Defendants contend that Plaintiff has "fail[ed] to state a claim" because (1) Defendants "are not state actors" and (2) Plaintiff's Complaint "fails to allege how Defendants acted under color of state law."  ECFs 22 at 1-2; 44 at 1-2.  Defendants specifically argue that their alleged conduct is not "fairly attributable to the State," primarily because such allegations do not plausibly suggest that Defendants "acted in concert" with county officials.  *Id.* at 4-7 (quotations omitted).  Consequently, Defendants request that the Court dismiss all claims against them with prejudice.  *Id.* at 8.  Plaintiff did not respond to either motion, even though they were filed well more than six months ago.[7]

### A.  Applicable Legal Standards

#### 1.  General Pleading Standard

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Otherwise, pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss such a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of *fact*, taken as true, to state a claim to

---

[7] *See Noland v. City of Albuquerque*, CIV-08-0056 JB/LFG, 2009 U.S. Dist. LEXIS 45645, at *4 (D.N.M. Feb. 5, 2009) (observing that "[t]he Court, of course, cannot grant … a motion to dismiss … based solely on a plaintiff's failure to respond and must consider the merits of the motion").

Case 2:20-cv-01324-JB-GJF   Document 54   Filed 02/07/22   Page 6 of 23

relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (emphasis added) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)).  Consequently, when the Court "evaluat[es] the sufficiency of a complaint," it must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191).  In other words, "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  Instead, the court is to only "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Iqbal*, 556 U.S. at 678 (explaining that such well-pled "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### 2.  Liability under § 1983

Under 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights), any "person" acting under color of state law who "subjects … [another] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  A "§ 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  To be liable, an individual must "ha[ve] been *personally involved* in the underlying violations through their own participation or supervisory control." *Moya v. Garcia*, 895 F.3d 1229, 1232-33 (10th Cir. 2018) (emphasis added).  An individual sued for his or her personal involvement pursuant to a "theory of supervisory liability" must have also "[1] 'promulgated, created, implemented or possessed responsibility for the continued operation of a policy that … caused the complained of

constitutional harm' and [2] 'acted with the state of mind required to establish the alleged constitutional deprivation.'" *Id.* at 1233 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).[8]

Additional "persons to whom § 1983 applies" include "municipalities and other local government units," *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978)—as well as "private defendants fulfilling a government function." *McGee v. Corizon*, 831 Fed. Appx. 381, 384 (10th Cir. 2020) (unpublished) (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215-16 (10th Cir. 2003)); *see also Dubbs*, 336 F.3d at 1216 (applying § 1983 to "private entities acting under color of state law"). Nevertheless, "[i]t is well established that in a § 1983 case" such public or private entities "cannot be subject to liability at all unless the harm was caused in the implementation of 'official … policy.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952 (2018) (quoting *Monell*, 436 U.S. at 691); *see also McGee*, 831 Fed. Appx. at 384 (observing that "the *Monell* doctrine—requiring an official policy to be the moving force behind a constitutional violation— applies to private [entities]" (citation omitted)). To establish § 1983 liability for such entities, "a plaintiff must show 1) the existence of a … policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). In other words, there must have been "a direct causal link between [an entity's policy-

---

[8] Government officials sued in their *individual capacity*—whether they are sued under a theory of personal or supervisory liability—"enjoy qualified immunity when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 1232 (quoting *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 (10th Cir. 2016)); *Dodds*, 614 F.3d at 1191-92, 1206-07; *see also Mitchell v. Forsyth*, 472 U.S. 511, 556 n.10 (1985) (observing that "an official sued in his *official capacity* may not take advantage of a qualified immunity defense" (emphasis added)); *infra* note 22 (discussing official capacity suits). The Court, however, need not address qualified immunity at this stage in the proceedings, as neither of the motions being considered raises this issue. *See* ECFs 22, 24, 26, 40, 51; *Greer v. Dowling*, 947 F.3d 1297, 1303 (10th Cir. 2020) (observing that "qualified immunity is an affirmative defense that defendants must invoke in district court").

based or custom-based] action and the deprivation of federal rights." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

A complaint must also contain "allegations sufficient to establish action by Defendants under color of state law." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020). "Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, [the courts] have applied various analyses and referred to them as the 'nexus test,'[9] the 'public function test,'[10] the 'joint action test,'[11] and the 'symbiotic relationship test.'[12]" *Id.* (quoting *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013)). "At the heart of each test is 'whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.'" *Id.* (quoting *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016)).

---

[9] The nexus test "ask[s] whether the challenged activity 'results from the State's exercise of coercive power'"—i.e., whether "the state exercises sufficient 'coercive power' over the challenged action." *Wittner*, 720 F.3d at 775 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

[10] The public function test "asks whether the challenged action is a traditional and exclusive function of the state"—a test that is "difficult to satisfy." *Wittner*, 720 F.3d at 776-77 (quotation omitted).

[11] The joint action test "ask[s] 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Wittner*, 720 F.3d at 777 (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir.1995)). In other words, this test asks whether "state officials conspired with or acted jointly in making the [complained of] decision." *Id.* (further observing that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action" (quotation marks omitted)). Under this test, "[j]oint action exists if (1) the 'public and private actors share … a common, unconstitutional goal' or (2) 'there is a substantial degree of cooperative action between state and private officials.'" *Hatlee v. Olds*, 665 Fed. Appx. 695, 698 (10th Cir. 2016) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016)). And "a private party acts under color of state law if that party is a 'willful participant in joint action with the State or its agents.'" *Schaffer*, 814 F.3d at 1157 (quoting *Gallagher*, 49 F.3d at 1453).

[12] The symbiotic relationship test "has rarely been applied and has been limited to substantial, intimate long-term relationships." *Barnett*, 956 F.3d at 1235-367 (citations omitted).

3. <u>Fourth Amendment</u>

"The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting U.S. Const. amend. IV) (citation omitted). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citations omitted). The Tenth Circuit addresses issues "involving both the seizure and detention of personal property," by "analyz[ing] the propriety of the initial seizure … under the Fourth Amendment" and "the ultimate disposition of the property" under "procedural due process." *Snider v. Lincoln County Bd. of County Comm'rs*, 313 Fed. Appx. 85, 93 (10th Cir. 2008) (unpublished) (citing *Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 853, 856 (10th Cir. 1993); *Kripp v. Luton*, 466 F.3d 1171, 1173 (10th Cir. 2006)).

"Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exception." *United States v. Neugin*, 958 F.3d 924, 930 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003)). Similarly, "[i]n the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) (quoting *United States v. Place*, 462 U.S. 696, 700-01 (1983)); *see also id.* at 1259 (observing that "animals, including dogs, constitute personal property protected by the Fourth Amendment");

9

*United States v. Shrum*, 908 F.3d 1219, 1230-31 (10th Cir. 2018) (holding that "secur[ing] [a] Defendant's home from the outside" through a "perimeter stakeout" constituted a "meaningful interference with [his] possessory interests in property"—and thus amounted a "Fourth Amendment *seizure*"—and that "[a]bsent valid consent, the warrantless seizure of a home even in the presence of probable cause is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances'" (emphasis in original) (quotation omitted)).

### 4. Fourteenth Amendment

"The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving any person 'of life, liberty, or property, without due process of law.'" *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1043 (10th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1). "In evaluating a procedural due process claim, we undertake a two-step inquiry. First, we ask whether [Defendants'] actions deprived [Plaintiff] of a constitutionally protected property interest. If [Plaintiff] can satisfy this requirement, we then consider whether they were afforded the appropriate level of process." *Pater v. City of Casper*, 646 F.3d 1290, 1293 (10th Cir. 2011) (citation omitted).[13]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

---

[13] As to the first question, "[p]roperty interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1294 (quotation omitted). And "[i]f state law gives rise to an entitlement, we still must determine whether the entitlement constitutes a property interest for purposes of the Fourteenth Amendment." *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotation omitted). As to the second question, the inquiry is "flexible and calls for such procedural protections as the particular situation demands"—but nevertheless contains the "fundamental requirement of … the opportunity to be heard at a meaningful time and in a meaningful manner." *Pater*, 646 F.3d at 1298 (quotation omitted). Finally, although "[t]he Due Process Clause contains a substantive component that bars certain governmental actions regardless of the fairness of the procedures used to implement them," this case does not appear to concern "[t]he restricted scope of substantive-due-process claims." *Onyx*, 838 F.3d at 1048-50 (quotation omitted) (observing that even "[i]ntentionally or recklessly causing injury through the abuse or misuse of governmental power is not enough").

direction that all persons similarly situated should be treated alike." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV, § 1). "The Clause's protections extend," for example, "to disparate treatment based on race and gender." *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265-66 (10th Cir. 2013); *see also Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir. 1986) (observing that "[s]uspect classifications generally include those based on race, alienage, and national origin"). Furthermore, this Clause "gives rise to a cause of action even if a plaintiff does not belong to a particular class or group." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016). "To prevail on this class-of-one theory, a plaintiff must allege and prove (1) 'that [he] has been intentionally treated differently from others similarly situated' and (2) 'that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)).

The Tenth Circuit has "emphasized that a class-of-one plaintiff must *identify* others 'similarly situated in every material respect.'" *Id.* (emphasis added) (quoting *Jicarilla*, 440 F.3d at 1210). In other words, a plaintiff "must allege *facts* that [defendants] treated him differently than other similarly situated [individuals]"—individuals who are "alike in all relevant respects." *Requena*, 893 F.3d at 1210 (emphasis added) (quotation omitted).[14]

---

[14] "Depending on the case and the nature of the differential treatment, the allegations necessary to establish this level of similarity will vary." *Herbert*, 828 F.3d at 1253 (quoting *Haik v. Salt Lake City Corp.*, 567 Fed. Appx. 621, 632 (10th Cir. 2014)). "A class-of-one claim fails if there is 'either a rational basis for the [challenged] treatment' or 'a material difference' between the plaintiff and others who were allegedly similarly situated." *Id.* (quoting *Jicarilla*, 440 F.3d at 1210).

**B.  Analysis**

Although the Court liberally construes[15] Plaintiff's Complaint and assumes the truth of its factual allegations, the Court nevertheless recommends dismissing Plaintiff's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment (equal protection) claims.   The Court further recommends dismissing Plaintiff's Fourth Amendment and Fourteenth Amendment (due process) claims—but only against Defendants DLCHS and DAG.  With respect to Defendants Brown, Molina, Foster, McCoy, and Reitz, however, the Court does not recommend dismissing either the Fourth Amendment or due process claims.

1.   Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment (Equal Protection) Claims

As a preliminary matter, the Court finds that the Complaint contains no factual allegations to plausibly suggest that *any* Defendants violated Plaintiff's Fifth,[16] Sixth,[17] Seventh,[18] or Eighth[19] Amendment rights.

---

[15] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (observing that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers").

[16] The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.  "The Due Process Clause of the Fifth Amendment," however, "applies only to action by the federal government while the Due Process Clause of the Fourteenth Amendment applies to actions by state governments."  *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013).

[17] The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

[18] The Seventh Amendment provides that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. Const. amend. VII.

[19] The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

The Court further finds that the Complaint contains no factual allegations sufficient to plausibly suggest that *any* Defendants violated Plaintiff's Fourteenth Amendment equal protection rights.  Although Plaintiff does not allege that he was treated differently based on a "suspect classification," *Edwards*, 789 F.2d at 1482, he does assert that he was "not treated in the same manner as others in similar conditions and circumstances."  Compl. ¶ 15.  In doing so, however, Plaintiff does not allege facts that plausibly suggest both that (1) Defendants "treated him differently than other similarly situated [animal sanctuary operators on rental properties]," *Requena*, 893 F.3d at 1210, whom Plaintiff specifically "identif[ied];" and (2)  "there [was] no rational basis for the difference in [such] treatment," *Herbert*, 828 F.3d at 1253 (emphasis added).  *See* Compl.; *Alpenglow*, 894 F.3d at 1195 (instructing courts to "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable").  Furthermore, the Complaint is devoid of any factual allegations pertaining to any other individual whom Plaintiff contends is similarly situated to him.

2.   Fourth Amendment and Fourteenth Amendment (Due Process) Claims

The Court also finds that the Complaint contains no factual allegations sufficient to plausibly suggest that Defendants DLCHS or DAG violated Plaintiff's Fourth Amendment or due process rights.  Although Plaintiff alleges that "defendants have policies, customs and practices under the color of law to deny Plaintiff of property and property rights," Compl. ¶ 41, this is a purely conclusory statement the Court is required to disregard.  *Alpenglow*, 894 F.3d at 1195.  The Court observes that the "remaining, factual allegations [do not] plausibly suggest" that Plaintiff's "harm was caused in the implementation of 'official … policy.'"  *Lozman*, 138 S. Ct. at 1952; *see also Abila v. Funk*, No. 14-1002 JB/SMV, 2016 U.S. Dist. LEXIS 172737 (D.N.M. Dec. 14, 2016), at *45-53 (reviewing numerous municipal liability cases and concluding that "[they] all stand for

13

the same thing: at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted").

Although the Court is recommending dismissal of Plaintiff's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment (equal protection) claims—and his Fourth Amendment and Fourteenth Amendment (due process) claims against Defendants DLCHS and DAG—the Court reaches a different conclusion with respect to his Fourth Amendment and Fourteenth Amendment (due process) claims against the remaining Defendants (Brown, Molina, Foster, McCoy, and Reitz).  First, the Court finds that the Complaint contains enough factual allegations sufficient to plausibly suggest that these remaining Defendants violated Plaintiff's Fourth Amendment rights by unreasonably searching his rental property—by infringing on Plaintiff's reasonable expectation of privacy in this property that he had rented and "continuously occupied" since August 2015.  *See* Compl. ¶¶ 13-17, 19, 21-23, 25, 31-35, 40.  The Complaint also plausibly suggests that these remaining Defendants unreasonably seized his property—specifically, by (1) engaging in some "meaningful interference with [his] possessory interests in [his] property," *Jacobsen*, 466 U.S. at 113, including his rental property and his animals, and (2) doing so without a "judicial warrant issued upon probable cause … particularly describing the items to be seized," *Mayfield*, 826 F.3d at 1256.  *See* Compl. ¶¶ 13-17, 19, 21-23, 25, 31-35, 40.

Next, the Court finds that the Complaint contains enough factual allegations when taken as true to plausibly suggest that Defendants Brown, Molina, Foster, McCoy, and Reitz violated Plaintiff's due process rights by "depriv[ing] [him] of a constitutionally protected property interest" without "afford[ing] [him] the appropriate level of process."  *Pater*, 646 F.3d at 1293.  As noted, Plaintiff alleges that each of these individuals "took or confiscated [his] personal property from [his] dwelling unit and premises."  Compl. ¶¶ 16, 19.  In addition, Plaintiff further

alleges that these individuals took his property (particularly his dogs) without any sort of "notice," "service," "affidavit," "hearing," "warrant," "court order," or "legal authority."  ¶¶ 13-17, 19, 21-23, 25, 31-35.

Furthermore, the Court finds that the Complaint contains enough factual allegations to plausibly suggest that the conduct of these individuals was "fairly attributable to the State" and thus "under color of state law."  *Barnett*, 956 F.3d at 1235.  To begin, the Complaint alleges that Defendants Brown, Molina, and Foster were employees and officers of Luna County who acted in their official capacities.  Compl. ¶¶ 7-8.  Moreover, the Court finds that the factual allegations plausibly suggest that Foster,[20] McCoy, and Reitz willfully "acted in concert," *Wittner*, 720 F.3d at 777, with Luna County officials in depriving Plaintiff of his personal property.  For instance, it seems unlikely that Foster, McCoy, and Reitz would have arrived at Plaintiff's property on the exact same day, and only a few hours after, as Defendants Brown and Molina removed Plaintiff from the property—if there were not some sort of "substantial degree of cooperative action" between these private actors and county officials or *at least* "a common … goal" of depriving Plaintiff of his dogs, *Schaffer*, 814 F.3d at 1157.  *See* Compl.

Indeed, the Complaint alleges that one of Foster's employees attended a meeting earlier that morning with Defendant Brown, county counsel, a county commissioner, and the landlord where "it was decided to evict Plaintiff … [for] trespassing."  ¶¶ 25, 27.  And Foster herself had discussions with Defendant Brown at the courthouse that morning regarding the status of Plaintiff's removal from the property.  ¶ 28.  Furthermore, DAG employees McCoy and Reitz are

---

[20] Defendants assert that Foster and her employer, Defendant DLCHS, were not state actors.  ECF 44 at 1-7. The Court, however, must "assume the veracity," *Iqbal*, 556 U.S. at 67, of Plaintiff's factual allegation that Foster was employed by DLCHS, "a unit of local government," ¶¶ 5, 8.  For purposes of the above analysis, however, the Court will assume that Foster—like McCoy and Reitz—was employed by a private entity, as the end result is the same: Plaintiff has pled enough facts to plausibly suggest that these individuals acted in concert with Luna County officials in unlawfully depriving him of his property.

alleged to have acted with Foster (and DAG, DLCHS, and "Does") in "a coordinated effort," to "confiscate and steal Plaintiff's animals."  ¶¶ 5, 8, 9, 31.  In addition, the Complaint alleges that "[the Sheriff's Department] and deputies *allow[ed]* such a [taking]"—and benefited from the help of a DAG employee, Defendant McCoy, who "threatened [Plaintiff] that deputies would be there" to ensure that he stayed off the property while his personal property was removed.  ¶¶ 33, 35 (emphasis added).  Consequently, the Court concludes that the Complaint adequately alleges that Defendants Foster, McCoy, and Reitz shared at least a common goal with county officials—if not a substantial degree of cooperation—in interfering with Plaintiff's possessory interests in his personal property, including by depriving him of such property.

## III. THE COURT SHOULD GRANT THE MOTION TO QUASH SUMMONS

Because Plaintiff is proceeding in forma pauperis, "officers of the court [must] issue and serve all process."  28 U.S.C. § 1915(d); *see also* Fed. R. Civ. P. 4(c)(3) (requiring the Court to "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court" in such instances).  Consequently, the Court ordered the Clerk to (1) notify Defendants Brown and Molina—at the addresses provided by Plaintiff—that an action has been commenced and (2) request that these Defendants waive service pursuant to Fed. R. Civ. P. 4(d). *Id.* at 3.  Defendants Brown and Molina, however, did not waive service, and the Court ordered the United States Marshals to "serve … [the] summons and a copy of Plaintiff's Complaint" on them at the address provided by Plaintiff: the "Luna County Sheriff's Department."  ECF 14 at 1-2. *See* ECFs 17-18 (United States Postal Service receipts, showing that the Sheriff's Department received the District Court's mailings for Defendants Brown and Molina).

Defendants Brown and Molina now request that the Court "quash the summons issued to [them]" because (1) the record lacks any "return or proof of service forms" for them, any signatures

by them accepting service, or any "statement of compliance with federal or state rule 4;" and (2) the rules "allow[] service by leaving the summons at one's employer only *after* an attempt has been made to serve the individual personally and at their residence."   ECF 26 at 1-3 (emphasis added).

### A.  Applicable Legal Standards

"Effectuation of service is a precondition to suit."  *Kizzar v. Richardson*, No. CIV 08-1037 JB/CEG, 2009 U.S. Dist. LEXIS 78060, at *7 (D.N.M. Aug. 14, 2009) (quoting *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998)).  In addition, "[t]he burden of establishing validity of service is on the plaintiff," and although Plaintiff in this case is pro se, "[a] litigant's pro se status does not relieve him of the requirement of effective service."  *Id.* (citations omitted).  Nevertheless, "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."  *Serna v. Webster*, No. CIV 17-0020 JB/WPL, 2009 U.S. Dist. LEXIS 78060, at *75 (D.N.M. Sept. 30, 2017) (quoting *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876, 301 U.S. App. D.C. 327 (D.D.C. 1993)).  Furthermore, "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant."  *Martinez v. CitiMortgage, Inc.*, No. CIV 17-1195 JB/GBW, 347 F. Supp. 3d 677, 687 (D.N.M. Sept. 20, 2018) (bracket omitted) (quoting *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)).

Service upon an individual must occur by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

> Pursuant to New Mexico Rules of District Court, Rules of Civil Procedure, personal service of process shall be made upon an individual by [1] personally delivering a copy of a summons and complaint or other process to the individual or [2] mailing each to the defendant in an envelope "addressed to the named defendant and further provided that the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope or package containing the summons and complaint." Only if service is not, or can not be, accomplished [via this method or, after unsuccessfully attempting this method, by "delivering a copy of the process to some person residing at the usual place of abode of the defendant"] may service of process be made "by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment."

*Sublet v. City of Albuquerque*, No. CIV 10-113 RB/DJS, 2010 U.S. Dist. LEXIS 160460, at \*3-4

(D.N.M. May 26, 2010) (quoting N.M.R.A. 1-004(E)(3), (F)(3)) (citing N.M.R.A. 1-004 F(1)-(2)).

**B.  Analysis**

"There is neither evidence that [Defendants Brown and Molina] authorized [Estella Ortiz at the Sheriff's Department[21]] to accept service on [their] behalf, nor evidence that Plaintiff had already unsuccessfully attempted to personally serve [them]." *Id.* at \*7. Consequently, Defendants Brown and Molina have "not been served in [their] individual capacity" or "in [their] official

---

[21] The return receipts show Ms. Ortiz as the individual at the Sheriff's Department who received the two mailings from the Court. *See* ECFs 17-18.

18

capacity." *Id.*[22]  The Court will therefore recommend "quash[ing] the service." *Martinez*, 347 F.

Supp. 3d at 687.

The Court, however, will recommend "giv[ing] [Plaintiff] an opportunity to re-serve

[Defendants Brown and Molina]", *id.*—but only if he first shows good cause in writing as to why

he has failed to prosecute this case.  *See infra* Section IV.  If Plaintiff shows good cause, the Court

should then order the Clerk of the Court to again notify Defendants Brown and Molina—at the

current Sheriff's Department address on file—that "an action has been commenced and [again]

request that [they] waive service pursuant to Fed. R. Civ. P. 4(d)."  ECF 9 at 3-4.[23]

If Defendants Brown and Molina do not wish to waive service, then the Court can consider

other options for providing Plaintiff with another opportunity to re-serve them, such as by

(1) ordering the United States Marshals Service to "deliver[] a copy of the summons and of the

complaint to [Defendants Brown and Molina] personally," Fed. R. Civ. P. 4(e)(2)(A), at or near

the current address provided by Plaintiff; (2) requiring "Plaintiff [to] submit to the Clerk of the

Court the home address information of [Defendants Brown and Molina] so that the Clerk may mail

an alias summons and request for waiver to [them] under Fed. R. Civ. P. 4(d)," *Sublet*, 2010 U.S.

Dist. LEXIS 160460, at *7-8; or (3) permitting "service of process [to] be made by delivering a

---

[22] To the extent Defendants Brown and Molina are sued in their *official* capacity, such allegations "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky. v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  Consequently, such suits should "be treated as a suit against the *entity*," provided it "receives notice and an opportunity to respond." *Id.* (emphasis added).  *Cf.* ECFs 30, 38 (dismissing "Luna County and Luna County Sheriff's Department … with prejudice"); *Sublet*, 2010 U.S. Dist. LEXIS 160460, at *4-5 (observing that "[u]nder New Mexico Rules of District Court, Rules of Civil Procedure 1-004(H)(1), service may be made upon a local government by serving a copy of the summons and complaint to the [county] clerk").

[23] The Court recommends this course of action because counsel represented that he was "explor[ing] the possibility of executing a waiver of service" for Brown and Molina and that they may likely "agree to waive service"—if provided another opportunity to timely do so.  *See id.* (showing that the notice and waiver were sent in January 2021); Form AO 398, Notice of a Lawsuit and Request to Waive Service of a Summons (Rev. 01/09)  (permitting a defendant to waive service of a summons—but only within a certain amount of time after "the date th[e] notice was sent," e.g., "at least 30 days" after the date on which the notice was sent to a defendant in the United States).

copy of the process at the actual place of business or employment of [Defendants Brown and Molina] to the person apparently in charge thereof," N.M.R.A. 1-004 F(3)—but only if service cannot be accomplished by personal delivery, mail, or "delivering a copy of the process to some person residing at [the defendant's] usual place of abode." N.M.R.A. 1-004 F(1)-(2); Fed. R. Civ. P. 4(e).

## IV. THE COURT SHOULD DENY PLAINTIFF'S MOTIONS FOR CONTINUANCE

In June 2021, Plaintiff asked for "a continuance for 45 days" so that he could obtain help with "review[ing] the documents in this case." ECF 40 at 1-2. And in December 2021, Plaintiff advised the Court that he "came down with covid-19 delta variant on 07-29-2021" and asked the court to "postpone this trial till after January 2022"—specifically by "giv[ing] [him] 90 days to see if [he is] fully recovered." ECF 51. Because (1) Plaintiff has now had significantly more than 45 days to review the documents that he wished to review in June 2021 and (2) there is currently no trial date to postpone, the Court will recommend denying his motions for continuance as moot.

## V. THE COURT SHOULD DISMISS THIS CASE IF PLAINTIFF FAILS TO SHOW GOOD CAUSE FOR FAILING TO PROSECUTE

Since Plaintiff initiated this action in December 2020, three separate groups of named Defendants have filed motions to dismiss [ECFs 19, 22, 44], and a fourth group of named Defendants has filed a motion to quash summons [ECF 26]. It has been over six months since the last of these motions was filed, *see* ECF 44 (filed July 2021), and Plaintiff has not filed responses to *any* of these motions.[24] Furthermore, aside from filing a complaint (and some minimal efforts

---

[24] As noted, this failure "constitutes [Plaintiff's] consent to grant the motion[s]." D.N.M.LR-Civ. 7.1(b). In addition, one of these motions has already been granted. *See* ECF 38 (adopting the recommendation [ECF 30] to grant a motion to dismiss [ECF 19]).

associated with the Court's service of summons), Plaintiff has taken no meaningful steps to move this case forward in over two years.[25]

The Court may dismiss Plaintiff's case if (1) "no steps are taken to move the case forward" for "a period of ninety (90) days" and (2) Plaintiff is "give[n] written notice that the action may be dismissed thirty (30) days after the date of [such] notice, unless good cause is shown."  D.N.M.LR-Civ. 41.1; *see also Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (observing that Rule 41(b) of the Federal Rules of Civil Procedure "has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the … court's orders"); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (observing that pro se plaintiffs must "follow the same rules of procedure that govern other litigants" (internal quotation marks omitted)).

More than ninety days have passed since Plaintiff has taken *any* steps to move this case forward.  *See*, *e.g.*, ECFs 48-53; *see also* supra note 25.  Plaintiff is hereby provided **NOTICE** that **this case may be dismissed if, within thirty days, he does not show good cause in writing as to why he has failed to move this case forward**.  Consequently, the Court will recommend dismissing this case without prejudice for Plaintiff's failure to prosecute if he does not show good cause in writing as to why he has failed to move this case forward.[26]

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that this Court **GRANT IN PART** Defendants DAG, Tammy McCoy, and Mike Reitz's Motions to Dismiss [ECF 22] and Defendant DLCHS

---

[25] *See* ECFs 1-5, 13 (containing Plaintiff's complaint, in forma pauperis motion, motion to file electronically, and notification form, filed from December 2020 to March 2021), 11-12, 16-18, 21, 31, 33, 45-48 (filings related to the Court's service of the summons on the ten named Defendants, filed from February 2021 to July 2021).

[26] Plaintiff's deadline for showing good cause is thirty days after the filing of this PFRD.  Plaintiff should not confuse his thirty-day deadline to show cause with his fourteen-day deadline to file any objections to the PFRD.  These are *separate* deadlines.

and Sandra Foster's Motion to Dismiss [ECF 44] by **DISMISSING** (1) Plaintiff's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment (equal protection) claims and (2) Plaintiff's Fourth and Fourteenth Amendment (due process) claims against Defendants DLCHS and DAG.  The Court recommends that these Defendants' Motions to Dismiss [ECFs 22, 44] otherwise be **DENIED**, thus permitting the Fourth Amendment and Fourteenth Amendment (due process) claims against Defendants Brown, Molina, Foster, McCoy, and Reitz to remain for now.

**IT IS FURTHER RECOMMENDED** that this Court **GRANT** the Motion to Quash Summons [ECF 26] by **QUASHING** the attempted service of process on Defendants Brown and Molina.

**IT IS FURTHER RECOMMENDED** that the Court give Plaintiff an opportunity to re-serve Defendants Brown and Molina—but only if he first shows good cause in writing as to why he has failed to move this case forward.  If Plaintiff shows good cause, the Court should then order the Clerk of the Court to again notify Defendants Brown and Molina, at their current address on file, that an action has been commenced and again request that they waive service pursuant to Fed. R. Civ. P. 4(d).  If Defendants Brown and Molina do not waive service, then the Court should consider other options, including those described in Section III(B) above, for affording Plaintiff another opportunity to re-serve Defendants them.

**IT IS FURTHER RECOMMENDED** that this Court **DENY** Plaintiff's Motions for Continuance [ECFs 40, 51] **AS MOOT**.

**IT IS FINALLY RECOMMENDED** that this Court **DISMISS** this case **WITHOUT PREJUDICE** for Plaintiff's failure to prosecute if he does not show good cause in writing **within thirty days of the filing of this PFRD** as to why he has failed to move this case forward.

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.